IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JONATHAN BRADLEY SHADWICK, ) | Case No. 05-21412-7-DRD |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| JONATHAN BRADLEY SHADWICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 05-2076-DRD |
| ) | |
| UNITED STATE DEPARTMENT OF ) | |
| EDUCATION, KEYBANK USA, N.A., ) | |
| and CURATORS OF THE UNIVERSITY ) | |
| OF MISSOURI ) | |
| Defendants. ) | |

MEMORANDUM OPINION

In this adversary proceeding, plaintiff Jonathan Bradley Shadwick ("Debtor") seeks a determination, pursuant to 11 U.S.C. § 523(a)(8), that his student loan debt, owed to defendants United State Department of Education ("Education"), Keybank USA, N.A. ("Keybank") and the Curators of the University of Missouri ("Curators") should be discharged for the reason that excepting the debts from discharge would impose upon him an undue hardship. This is a core proceeding of which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and which it may hear and determine pursuant to 28 U.S.C. § 157(a), 157(b)(1) and 157(b)(2)(I). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the Debtor has not satisfied

his burden of proving that repayment of the debts owed to Education and Curators[1] would impose an undue hardship upon him and that they are therefore excepted from discharge under § 523(a)(8).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Debtor seeks a discharge of his liability on numerous, separate student loans taken out over a seven-year period from 1997 to 2004 to finance his bachelor's degree and law degree. Debtor is 28 years old and has no disabilities or other medical conditions which limit his ability to earn income. In addition to earning a bachelor's degree in Business Administration from Missouri Southern State College, Debtor graduated from the University of Missouri School of Law and he has completed several courses toward a Masters in Business Administration. The total indebtedness owed by Debtor to Curators as of February 16, 2006 was $17,907.74.[2] The total indebtedness owed to Education as of October 26, 2005 was $91,159.44.[3] After graduation from law school, Debtor immediately secured employment for the state of Missouri doing legislative research, with a starting salary of $36,000. Debtor sat for the bar exam in July of 2005, and did not pass. Debtor's position with the state of Missouri was terminated on October 31, 2005.[4] At the time of trial, Debtor was unemployed.

Debtor has made no payments whatsoever on any of his student loans. Additionally, he has not sought deferment or forbearance from either Education or Curators. According to the testimony from the Curator's representative, Debtor is eligible for a deferment program based on

---

[1] Keybank did not file a timely answer, therefore, that debt was discharged pursuant to the Court's Order of Default Judgment entered on February 2, 2006.

[2] Stipulation of Plaintiff Shadwick and Defendant the Curators of the University of Missouri ("Curators Stipulation").

[3] Defendant's Exhibit #1.

[4] Plaintiffs's Exhibit #3.

2

unemployment and economic hardship. After a period of deferment, Debtor would be eligible to make temporary payments in an amount less than that which would ordinarily be required, starting as low as $25.00 per month, subject to review after a period of six months. The evidence from the Education representative was that Debtor's initial payment under the Income Contingent Repayment Plan ("ICRP") would be $0.00. Even if Debtor were in this program for a period of 25 years, he would receive a discharge of the balance of the unpaid debt at the age of 53. Debtor has not applied for the program.

Debtor and his spouse have three children, ages 5, 6 and 8. Debtor's youngest child has been diagnosed with severe Autism and is currently enrolled in a special needs program offered by the Columbia school system. Debtor's spouse is 26 years old and unemployed. Although she testified as to certain medical conditions, including a mood disorder, Debtor testified that they are controlled by medication. She testified that her medical conditions did not prevent her from providing appropriate care for her children. The evidence also demonstrates that she has worked in the past and could do so now on a part-time basis as the children are not in the house from approximately 9 a.m. to 4 p.m. on weekdays. According to the evidence, she has been evaluated for ADHD, but it was not clearly established that she has been diagnosed. Her testimony is only that she "believed" that she has been so diagnosed. Debtor's spouse also testified that she has a "driving phobia," but there has been no medical diagnosis of this condition and she has never sought professional help for it. In any event, there is no testimony that any of these conditions prevent her from obtaining part-time employment.

Debtor's mother and brother-in-law passed away while Debtor was in law school, events which Debtor believes negatively impacted his overall grade point average in law school. Neither Debtor or his spouse have relatives who are available to assist them emotionally or

3

financially.

## II. DISCUSSION

### A. Applicable Legal Principles on Determination of Undue Hardship

Debtor contends that it would be an undue hardship for him to repay the remaining amount due on his student loans. Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or his dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001); *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981). Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts. In this Circuit, the applicable standard is the "totality of the circumstances" test. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004). In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable, necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case. *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676. The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his student loan without reducing what the debtor and his dependents need to

4

maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

There is no precise formula for, or statutory definition of, what constitutes a "minimal standard of living." On one end of the spectrum, it is clearly not enough for a debtor simply to demonstrate that payment of a student loan would require a readjustment of his financial situation or a diminution in lifestyle. *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 817 (N.D. Fla. 2003). A debtor is therefore not entitled to maintain the standard of living enjoyed before the filing of the petition. *See Stanley*, 300 B.R. at 817. On the other hand, it is not necessary that a debtor live in abject poverty in order to demonstrate undue hardship and obtain a discharge of student loans. *See Stanley*, 300 B.R. at 818. A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment. *Gill v. Nellnet Loan Services, Inc. (In re Gill)*, 326 B.R. 611, 627 (Bankr. E.D. Va. 2005); *see also Myers v. Fifth Third Bank (In re Myers)*, 280 B.R. 416, 421-422 (Bankr. S.D. Ohio 2002) (minimal standard of living includes the following elements: shelter, utilities, food and personal hygiene, clothing, health insurance or ability to pay medical and dental expenses and recreation).

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability

of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *VerMaas v. Student Loans of North Dakota (In re VerMaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

### B. Analysis of the Totality of the Circumstances

### 1. Past, Present and Reasonably Reliable Future Financial Resources

The first factor that the Court must consider is Debtor's past, present and reasonably reliable future financial resources. In addition to the current and prospective income of the Debtor, the Court must consider the income or earning potential of Debtor's spouse.[5] As noted previously, Debtor's spouse is currently voluntarily unemployed. Although she testified that she suffers from a mood disorder, Debtor testified that this affliction is controlled by medication. There is no evidence that Debtor's spouse has actually been diagnosed with ADHD or that she has even sought professional help regarding her "driving phobia"; therefore, the Court cannot conclude that such disorders impede her ability to be gainfully employed. The evidence is that the Debtor's youngest child has Autism, however, he, like the other two children, is in school from approximately 9:00 a.m. to 4 p.m. on weekdays. Because the program that the Debtor's

---

[5] *See Bray v. Educ. Credit Mgmt. Corp. (In re Bray),* 332 B.R. 186, 192-193 (Bankr.W.D.Mo. 2005); *see also e.g., Sweeney v. Educ. Credit Mgmt. Corp. (In re Sweeney)*, 304 B.R. 360, 362-63 (D. Neb. 2002) ("Overwhelming authority requires that a court consider the spouse's income. This Court finds no published opinion of a court that holds to the contrary."); *Educ. Credit Mgmt. Corp. v. Buchanan (In re Buchanan)*, 276 B.R. 744, 751 (N.D. W. Va. 2002); *White v. U.S. Dept. of Educ. (In re White)*, 243 B.R. 498, 509 (N.D. Ala. 1999).

autistic son is in appears to be meeting his needs, offering helpful therapy and resulting in some improvements in his condition, it does not appear to the Court that his condition imposes any limits on the ability of the Debtor's spouse to be employed, at least on a part-time basis.

This case really centers on Debtor's future income and the lack of significant impediments to repaying his student loans. Although Debtor is presently unemployed, he does have significant earning capacity, a fact which the Court must consider in the undue hardship analysis. *See Weller v. Texas Guaranteed Student Loan Corp. (In re Weller)*, 316 B.R. 708, 716 (Bankr.W.D.Mo.2004) (Court must look beyond the debtor's present to the foreseeable future and consider debtor's education, training, employment history and ability to earn.); *Chapell v. Educational Credit Mgmt. Corp. (In re Chapelle)*, 328 B.R. 565, 571-72 (Bankr.C.D.Cal.2005) (Court declines to discharge student loan debt where debtor has a law degree, is healthy and has 13 years before retirement age during which she has the potential to secure employment and make payments on her student loans). Debtor is 28 years old and has no disabilities or other medical conditions which limit his ability to earn income. In addition to an undergraduate degree, Debtor has taken courses toward a Master's in Business Administration and has a law degree from the University of Missouri. Although he failed the bar exam the first time he took it, he is eligible to take it again and has offered no particularly good reason for not having done so. Obviously, Debtor's earning capacity would be enhanced if he would retake and pass the bar exam. Debtor could be preparing to retake the bar exam during this period of his unemployment. Additional evidence of Debtor's earning capacity is the fact that he was able to secure a legal job immediately out of law school which paid an annual salary of $36,000. The field in which Debtor chose to obtain his degree can be extremely lucrative and offers Debtor a wide range of employment opportunities. The Court is unpersuaded by Debtor's assertion that his grade point

7

average will prevent him from obtaining employment with a salary equal to or greater than the first job he secured immediately after graduating from law school.  On the stand, he appeared intelligent and articulate, Debtor seems, however, to have essentially given up on himself and asks the Court to do likewise, which the Court declines to do.

## 2. Debtor's Reasonable Necessary Living Expenses

There is little controversy about Debtor's current income or expenses.  Defendants did not really argue that any of the household's current monthly expenses are unnecessary or unreasonable.  Schedule I showed income of $2,945.00 per month which consisted of the $2,644.50 per month Debtor was making at his previous job and a $300.00 per month SSI payment.   The evidence at trial was that Debtor's current monthly income is $1,984.83, which includes unemployment compensation, food stamps and SSI payments.[6]  According to the evidence, the SSI payment has increased by $300.00.  Schedule J, filed with the case, shows monthly expenses of $2,881.00.  The evidence introduced at trial shows monthly expenses slightly lower in the amount of $2,757.00.[7]  According to the evidence, Debtor's home mortgage payment is now $726.00, an increase of $26.00.  Debtor also testified that because his spouse lost eligibility for state medicaid, the various prescription drugs she takes to control her conditions will have to be paid for by the household, at a monthly cost of $426.00.  It is clear that based on his present income, which consists solely of unemployment compensation, food stamps and certain social security payments, Debtor could not make a payment on the student loans while maintaining a minimal standard of living.   However, Debtor's prospects of future earnings, combined with any part-time income his spouse could contribute, suggest that Debtor

---

[6] Plaintiff's Exhibit 14.

[7] Plaintiff's Exhibit 14.

8

will be in a position to repay his student loans at some point in the near future.

### 3. Other Unique Circumstances

As noted previously, because Debtor is currently unemployed, the evidence is that he would be eligible to apply for an economic hardship deferment and to apply to participate in the ICRP, a program which involves making payments dependent on one's disposable income. According to the evidence, if Debtor was enrolled in the ICRP, his current payment would be $0. Debtor's ICRP payments would be reviewed annually for possible changes in income. Although Debtor testified that he was aware of this program and other repayment options available to him, he has not made any attempt to seek a deferment or forbearance from either Education or Curators, nor has he investigated his repayment options or made a single payment to either of the defendants. These facts, coupled with Debtor's significant capacity to earn future income, trouble the Court and weigh against a finding of undue hardship.

The availability of repayment of the student loans through the ICRP is but one of a number of factors that the Court is to consider in determining whether excepting the debts from discharge would impose an undue hardship on the Debtor. *Ford*, 269 B.R. at 677; *Mulherin v. Sallie Mae Servicing Corp. (In re Mulhern)*, 297 B.R. 559, 565 (Bankr.N.D.Iowa 2003); *In re Wilson*, 270 B.R. 290, 294-95 (Bankr.N.D.Iowa 2001). The Court must consider the consequences of Debtor's potential participation in the ICRP and the efficacy of that relief under the circumstances. *Fahrer*, 308 B.R. at 35. In this case, Debtor owes Curators approximately $17,907.74 and Education approximately $91,159.44, for a total student loan debt of approximately $110,000.00. Given the Debtor's age and his significant capacity to earn future income, there is little doubt that he would be able to repay a considerable amount, if not all, of his student loans prior to retirement. Even if Debtor were in the ICRP program for a period of

25 years, he would receive a discharge of the balance of the unpaid debt at the age of 53, well short of retirement. The age of a debtor is a factor the Court may take into consideration in assessing whether repayment of the debt constitutes an undue hardship. *Fahrer*, 308 B.R. at 35, *citing Ford*, 269 B.R. at 677; *In re Crowley*, 259 B.R. 361, 370; *In re Brown*, 249 B.R. 525, 527-28 (Bankr.W.D.Mo.2000). Unlike the 61 year old debtor in *Brown*, here, if Debtor were required to participate in an extended repayment plan his working life would not be extended at all.

Other factors which the Court may take into consideration in determining whether repayment would constitute an undue hardship are whether the dominant purpose of the bankruptcy petition was to discharge the student loan debt and the ratio of student loan debt to total indebtedness. Debtor's Schedule F and Amended Schedule F identify unsecured creditors holding claims totaling $185,213.00. Approximately 90% of the total amount of the unsecured debt set forth in the schedules is the student loan debts that the Debtor seeks to discharge. Additionally, the Court finds troubling the fact that Debtor filed this bankruptcy proceeding and the complaint to determine dischargeability of the debts almost immediately after graduation and failing the bar exam, even before the Curator loan went into repayment status, giving weight to the Court's conclusion that Debtor's primary goal in this bankruptcy was to discharge his student loans.

Many of the factors the courts have identified as relevant in determining the existence of undue hardship counsel this Court against finding repayment of Debtor's student loans as creating an undue hardship. Debtor is only 28 years old. He has no health deficits or physical or mental impairments. He filed his bankruptcy on the "eve of a lucrative career" and made absolutely no effort to repay any of his student loan debt, an amount which constitutes

10

approximately 90% of his total unsecured debt. He has a bachelor's degree and a law degree and has only attempted to take the bar exam one time. The Court is convinced that Debtor has the capacity to earn significant income but that he has failed to take the steps necessary to maximize his earning potential and repay his student loan debt. The Court also notes that even with a denial of the Debtor's request to discharge the debts owed to Education and Curators, Debtor will get some relief as a result of having filed his complaint because his indebtedness for certain student loans, now held by Keybank, in the scheduled amount of $31,761.00, will be discharged as a result of Keybank's failure to answer the complaint and the Court's subsequent entry of default judgement.

For all the above reasons, the Court finds that repayment of Debtor's student loan indebtedness to Education and Curators would not impose an undue hardship on Debtor and his dependents pursuant to 11 U.S.C. § 523(a)(8) and it is therefore not dischargeable. It is therefore

ORDERED that the indebtedness owed by Debtor to Education and Curators not be discharged pursuant to 11 U.S.C. § 523(a)(8).

A separate order will be entered in accordance with Bankruptcy Rule 9021.

DATED:    March 29, 2006           /s/ Dennis R. Dow
                                   HONORABLE DENNIS R. DOW
                                   UNITED STATES BANKRUPTCY JUDGE

Copies to:

Katharine S. Bunn
Janice A. Harder
E. Eugene Harrison